THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RIKER MCKENZIE-EL,

    *Plaintiff,*

    v.

                        Civil Action No. ELH-19-1956

INTERNAL REVENUE
SERVICE, *et al.*,

    *Defendants.*

## MEMORANDUM OPINION

Riker McKenzie-El, the self-represented plaintiff, has filed suit against a host of defendants. ECF 1 (the "Complaint"). He seeks, among other things, an order compelling the Internal Revenue Service ("IRS") to disclose and release certain agency records and relief from IRS collection actions.

In particular, plaintiff has sued the IRS; IRS officials David Kautter, Ann Willis, and Christine L. Davis; the United States of America (collectively with the IRS defendants, the "United States" or the "Government"); the Ports America Chesapeake, LLC ("PAC"); PAC officer David Burstein; the "Steamship Trade Association/International Longshoremen's Association" ("STA")[1]; and STA President Michael P. Angelos. *Id.*[2] I shall refer to PAC and Burstein collectively as the "PAC Defendants." And, I shall refer to STA and Angelos collectively, as the "STA Defendants."

---

[1] In their Opposition, the STA and Mr. Angelos aver that the "Steamship Trade Association/International Longshoremen's Association" does not exist as an entity, and that the entity's proper name is "The Steamship Trade Association of Baltimore, Inc." ECF 23-1 at 1.

[2] Although not listed as defendants on the Complaint's caption page, the Complaint's recitation of the defendants also includes Michael J Desmond; "Unknown Named Employees of the IRS"; former Acting Attorney General Matthew G. Whitaker; and Jessie K. Liu, the former United States Attorney for the District of Columbia. *See* ECF 1 at 3.

The Complaint contains ten counts. Count I alleges a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. ECF 1, ¶¶ 36-40. Count II asserts a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. ECF 1, ¶¶ 41-45. Count III alleges a claim of "18 U.S.C. 242 Deprivation of rights under the color of law." ECF 1, ¶¶48-53. Count IV alleges a violation of Mr. McKenzie-El's rights under the Fourth Amendment to the Constitution. *Id.* ¶¶ 54-61. In Count V, plaintiff asserts violations of the Fifth and Fourteenth Amendments. *Id.* ¶¶ 62-67. Count VI lodges a claim under 26 U.S.C. § 6103. ECF 1, ¶¶ 68-72. Count VII alleges a violation of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ECF 1, ¶¶ 73-82. Count VIII asserts a claim for "Refund of Garnished Wages and Benefits." *Id.* ¶¶ 83-87. In Count IX, plaintiff alleges "Declaration Against Exclusive Representation." *Id.* ¶¶ 88-89. And, Count X alleges a violation of 18 U.S.C. § 241. ECF 1, ¶¶ 90-93. In addition, although not listed as a stand-alone count in the Complaint, plaintiff appears to lodge claims against the individual defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* ECF 1, ¶¶ 19, 64, 67.

On July 2, 2019, the same day that plaintiff filed his Complaint, he also moved for a temporary restraining order and/or a preliminary injunction. ECF 2. PAC and STA subsequently moved to quash service for insufficiency of service of process. ECF 7; ECF 8. Thereafter, on July 29, 2019, plaintiff filed an amended motion for a temporary restraining order and/or a preliminary injunction. ECF 10. Plaintiff also opposed the motions to quash. ECF 11; ECF 12.

The United States moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and Rule 12(b)(6) (ECF 18), supported by a memorandum. ECF 18-1 (the "Government Motion"). In addition, the PAC Defendants moved to dismiss the Complaint under Rule 12(b)(6) (ECF 22), supported by a memorandum. ECF 22-1 (collectively, the "PAC Motion"). So too did the STA

Defendants (ECF 23), which is also supported by a memorandum. ECF 23-1 (collectively, the "STA Motion"). Plaintiff opposes the motions. ECF 32; ECF 33; ECF 34 (collectively, "Oppositions"). And, defendants have replied. ECF 35; ECF 36; ECF 37.

Throughout this litigation, the Court has also received a steady stream of submissions from the parties. These include plaintiff's motion for summary judgment (ECF 20), which he subsequently amended (ECF 39); defendants' motions to stay discovery and to deny the amended motion for summary judgment as premature (ECF 43; ECF 44; ECF 45); plaintiff's motion for default judgment against the individual IRS defendants (ECF 47), which the Government opposes (ECF 52); and plaintiff's motion for expedited consideration of his request for a preliminary injunction (ECF 55), which he amended. ECF 58.

No hearing is necessary to resolve this matter. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Government Motion (ECF 18), the PAC Motion (ECF 22), and the STA Motion (ECF 23). Accordingly, all other pending motions shall be denied as moot.

## I.    Background[3]

On December 10, 2002, Mr. McKenzie-El filed a Voluntary Petition for Bankruptcy in the District of Maryland. *See In re Riker McKenzie*, 02-69472, Doc. No. 1 (Bankr. D. Md.). The case was closed on February 20, 2004. *See id.* at Doc. No. 14. Mr. McKenzie-El filed another bankruptcy petition in the District of Maryland on April 25, 2006. *See In re Riker McKenzie*, 06-12335, Doc. No. 1 (Bankr. D. Md.).

---

[3] Given the procedural posture of the case, I shall assume the truth of the facts alleged in the Amended Complaint. *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). The Court "may take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

Mr. McKenzie-El consented to a lift of the automatic stay on March 14, 2007, to permit the Government to bring a suit in district court to reduce to judgment "trust fund recovery penalty assessments" levied against him. *See id.* at Doc. No. 59. Consequently, on August 31, 2007, the Government brought suit in federal court against Mr. McKenzie-El and the Riker (Rocky) McKenzie Human Development Center, Inc. ("MHDC"), a Baltimore-based corporation. *See United States v. Riker (Rocky) McKenzie*, JFM-07-2317, ECF 1 (D. Md.).

In the suit, the Government alleged that Mr. McKenzie-El was "required to collect, account for, and pay over taxes required to be withheld from the wages MHDC paid to employees during the fourth quarter of 1995, the second, third, and fourth quarters of 1996, and the first and second quarters of 1997." *Id.* ¶ 9. Moreover, the Government claimed that a delegate of the Secretary of the Treasury had "assessed against McKenzie a trust fund recovery penalty . . . totaling $93,695.10 based on McKenzie's failure to collect, account for, and pay over taxes" for the requisite quarters. *Id.* ¶ 11. And, the Government alleged that as of June 24, 2007, MHDC owed employment taxes totaling $279,297.91, "plus interest and statutory additions accruing by law to the date of payment." *Id.* ¶ 19.

Despite having advance notice of the lawsuit, Mr. McKenzie-El did not answer or otherwise respond to the suit. The United States subsequently requested a default judgment against Mr. McKenzie-El. *See id.* at ECF 10. Judge J. Frederick Motz, to whom the case was then assigned, entered a default judgment against plaintiff on January 24, 2008, ruling that the United States was entitled to recover from Mr. McKenzie-El "the sum of $121,834.69, together with interest and other statutory additions accruing from January 7, 2008, until paid." *See id.* at ECF 11. Mr. Mckenzie-El's bankruptcy case was closed shortly thereafter. *See In re Riker McKenzie*, 06-12335, Doc. No. 99 (Bankr. D. Md.).

The United States initiated garnishment proceedings against plaintiff on February 2, 2009. *Riker (Rocky) McKenzie*, JFM-07-2317, ECF 13. The Court Clerk issued a "Writ of Continuing Garnishment" to "P&O Ports Baltimore," "STA Containers Royalties," "International Longshoreman's Association," and "STA Vacation & Holiday of Baltimore, Inc." *See id.* at ECF 14 to ECF 17. Then, on June 9, 2009, Mr. McKenzie-El filed for bankruptcy in the District of Maryland. *See In re Riker McKenzie*, 09-20363, Doc No. 1 (Bankr. D. Md.).

As a result, Judge Motz stayed the Government's collection activities on July 1, 2009. *Riker (Rocky) McKenzie*, JFM-07-2317, ECF 25. But, the Court lifted the stay on July 12, 2010, in light of the fact that Mr. McKenzie-El's bankruptcy proceeding had been dismissed for failure to prosecute. *See id.* at ECF 27; *see also In re Riker McKenzie*, 09-20363, Doc No. 89. On September 24, 2010, Judge Motz entered an Order directing garnishee STA to turn over to the United States annual royalty payments owed to Mr. McKenzie-El. *Riker (Rocky) McKenzie*, JFM-07-2317, ECF 35.

On December 10, 2010, prior to the distribution of any royalty payments to the Government, Mr. McKenzie-El filed a bankruptcy petition under Chapter 7. He was discharged on May 25, 2011. *In re Riker McKenize*, 10-37872, Doc. No. 1, 26.

STA filed an interpleader action on March 29, 2012, to resolve competing claims to the royalty payments sought by both Mr. McKenzie-El and the Government. *STA-ILA Container Royalty Fund v. United States*, JFM-12-00974, ECF 1 (D. Md.). In its complaint, STA alleged that Mr. McKenzie-El had represented that he had discharged his debt to the Government and that all future royalty payments should be distributed directly to him. *Id.* ¶ 18. However, the United States also allegedly informed STA that it was entitled to Mr. McKenzie-El's annual royalty payment. *Id.* ¶ 19.

Litigation ensued, and on July 27, 2012, Judge Motz issued an Order granting summary judgment in favor of the Government and directing STA to distribute to the Government the money

it owed to Mr. McKenzie-El. *STA-ILA Container Royalty Fund*, JFM-12-00974, ECF 17. In his Order, Judge Motz stated that Mr. McKenzie-El was "restrained from instituting or prosecuting any proceeding in any State or United States Court against [STA] affecting the funds disputed in this action[.]" *Id.*

In response, Mr. McKenzie-El filed another bankruptcy petition. *See In re Riker Junior McKenize, Jr.*, 13-26171, Doc. No. 1 (Bankr. D. Md.). The bankruptcy court lifted the stay to allow the garnishment to continue during the bankruptcy proceeding. *See id.* at Doc. No. 34, 46. Plaintiff's bankruptcy case was dismissed on July 18, 2014. *See id.* at Doc. No. 61.

Plaintiff filed the instant lawsuit on July 2, 2019. *McKenzie-el v. IRS*, ELH-19-1956, ECF 1 (D. Md.). According to Mr. McKenzie-El, he satisfied the default judgment granted to the United States on October 20, 2014. *Id.* ¶ 24. Plaintiff asserts that although he does not owe money to the Government, the IRS assessed interest in the amount of $94,007.00. *Id.* ¶¶ 25-26. Further, plaintiff alleges that, in an effort to obtain payment, the IRS has "systematically targeted [him] with illegal collection practices," and has "subjected him to numerous, unnecessary, burdensome and unlawful wage garnishments." *Id.* ¶ 11. As a result, plaintiff was "forced to repeatedly furnish documentation" to the IRS, which the IRS allegedly has "ignored[.]" *Id.* ¶ 13. The IRS has also allegedly sent "fraudulent information" to PAC and STA to garnish plaintiff's wages, *id.* ¶ 32, which "eventually caused Plaintiff to resign" from his place of employment. *Id.* ¶ 35.[4]

Plaintiff claims that he has transmitted "numerous correspondences, via certified mail and FedEx, to the IRS in an attempt to retrieve evidence of its right to assess interest on the alleged debt

---

[4] The Complaint does not specify where plaintiff worked. However, in a civil rights action that Mr. McKenzie-El has brought against the Ports of America, STA, and the International Longshoreman's Association, and which is presently pending before this Court, he alleges that he worked as a longshoreman at the Port of Baltimore since 1977. *See McKenzie-El v. Ports of Am.*, ELH-19-1980, ECF 1, ¶¶ 10-14 (D. Md.).

on behalf of the DOJ." *Id.* ¶ 27. However, according to plaintiff, the IRS has "refused to provide the documentation requested but has maintained its stance on the interest being owed to the DOJ." *Id.* ¶ 28.

Mr. McKenzie-El seeks injunctive relief in the form of an order compelling the IRS to release "the information requested." *Id.* ¶ 47. He also seeks compensatory and punitive damages for alleged violations of his constitutional rights. *See id.* ¶¶ 67, 97. And, plaintiff asks the Court to direct the IRS to render an accounting of his debts and to order "the return of monies stolen by Burstein and Angelos, and given to IRS Defendants, under color of law." *Id.* ¶ 97.

## II.    Standard of Review

### A. Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc*., 776 F.3d 271, 272 (4th Cir. 2015); s*ee also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty*., 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co*., 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018); *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)); *see also Kerns*, 585 F.3d at 192. Alternatively, in a factual challenge, "the defendant maintains that the jurisdictional allegations of the complaint are not true." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck*, 848 F.3d at 270). In that circumstance, the court

"may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Beck*, 848 F.3d at 270; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647.

Here, the Government raises a factual challenge to the Court's subject matter jurisdiction. It asserts that the Court has no jurisdiction over plaintiff's claims for injunctive relief because of the jurisdiction-stripping effect of the Anti-Injunction Act, 26 U.S.C. § 7421(a). ECF 18-1 at 4-5. The Government also asserts that plaintiff's claims for declaratory relief are precluded by the Declaratory Judgment Act, 28 U.S.C. § 2201(a). ECF 18-1 at 6 n.2. And, the Government seems to suggest that the Court lacks jurisdiction over plaintiff's FOIA claim. *See id.* at 7.

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is

to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of

the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597,

606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). Of import here, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

I am mindful that plaintiff is self-represented. Thus, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank*, *N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot

ignore a clear failure to allege facts that support a viable claim."); *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot fashion claims for a plaintiff because he or she is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278. What the Fourth Circuit stated in *Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at *1 (4th Cir. 1992) (per curiam) (unpublished), is also apt:

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), *cert. denied*, 382 U.S. 966, 86 S. Ct. 458, 15 L.Ed.2d 370 (1965); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088, 106 S. Ct. 1475, 89 L.Ed.2d 729 (1986).

### III.    Discussion

The Government argues that the Anti-Injunction Act forecloses plaintiff's claims for injunctive relief with regard to the IRS's tax collection efforts and that the Declaratory Judgment Act has the same effect with respect to plaintiff's claims for declaratory relief. ECF 18-1 at 4-6. In

addition, the Government contends that the Court lacks jurisdiction over plaintiff's FOIA claim because he does not allege that he exhausted his administrative remedies. *Id.* at 7-8. The Government also maintains that plaintiff's APA claim falters on jurisdictional grounds. *Id.* at 7 n.3. According to the Government, plaintiff failed to plead adequately a claim under 26 U.S.C. §§ 6103 and 7431. ECF 18-1 at 9-10.

The PAC Defendants and STA Defendants both argue that plaintiff's claims fail as a matter of law under 26 U.S.C. § 6332. In their view, under § 6332, they are discharged of any liability for honoring the IRS's garnishment of Mr. McKenzie-El's assets. ECF 22-1 at 4-5; ECF 23-1 at 4-5.

In his Oppositions, Mr. McKenzie-El asserts a new claim under 42 U.S.C. § 1983. ECF 32 at 5; ECF 33 at 5; ECF 34 at 5. He also maintains that he has alleged a plausible violation of the FDCPA. ECF 32 at 6-7; ECF 33 at 6-7; ECF 34 at 7-8. And, Mr. McKenzie-El reiterates that he does not owe any money to the IRS. ECF 32 at 7-8; ECF 33 at 7-8; ECF 34 at 8-10.

### A. The Government Motion

1. The Anti-Injunction Act & Declaratory Judgment Act (Counts I, IV, V, and VII)

Plaintiff seeks injunctive relief from the Government's tax levy under the FDCPA and the Fourth, Fifth, and Fourteenth Amendments. According to the Government, this relief is foreclosed by the Anti-Injunction Act. *See* ECF 198-1 at 4-6.

Enacted in 1867, the Anti-Injunction Act (the "AIA") broadly prohibits suits seeking to restrain tax assessment or collection. 26 U.S.C. § 7421; *see Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 409 (4th Cir. 2003), *cert. denied*, 540 U.S. 825 (2003); *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 506 (4th Cir. 1999). The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 42 U.S.C. § 7421(a).

The Fourth Circuit has instructed that the AIA's language "'could scarcely be more explicit,' reflecting its overarching objective of protecting 'the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference.'" *Judicial Watch*, 317 F.3d at 409 (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974)). Thus, the Act's effect "is simple and obvious: courts lack jurisdiction to issue injunctive relief in suits seeking to restrain the assessment or collection of taxes." *Judicial Watch*, 317 F.3d at 409. Not even the presence of constitutional claims affects the AIA's preclusive force. *Alexander v. "Am. United" Inc*., 416 U.S. 752, 758-59 (1974) (holding that "the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act").

Here, plaintiff seeks to restrain the United States from collecting the trust fund recovery penalties pursuant to a judgment that it obtained against him in 2008. Accordingly, unless plaintiff's suit qualifies for one of two narrow exceptions to the Anti-Injunction Act, the Court is without jurisdiction to issue injunctive relief.

The first exception to the AIA traces back to *Enochs v. Williams Packing & Navigation Co*., 370 U.S. 1 (1962). There, the taxpayer requested an injunction to prevent the IRS from collecting social security and unemployment taxes. The Supreme Court reversed a lower court's grant of injunctive relief but held that such actions could proceed, despite the AIA, if a plaintiff could show that (1) "under no circumstances could the Government ultimately prevail," and (2) "equity jurisdiction otherwise exists." *Id.* at 7. In analyzing the initial factor, the Court explained that a court must determine, "on the basis of the information available to [the Government] at the time of the suit," whether, "under the most liberal view of the law and the facts, the United States cannot establish its claim." *Id.*

The Court created another exception in *South Carolina v. Regan*, 465 U.S. 367 (1984). In that case, South Carolina sought to enjoin the collection of federal taxes on the interest from state-issued bearer bonds, claiming that the tax violated the Constitution's Tenth Amendment. *Id.* at 370-72. The federal government did not refute the State's constitutional arguments, instead asserting that the Anti-Injunction Act barred the suit. The Supreme Court permitted the suit to proceed, announcing that the AIA does not foreclose actions "where . . . Congress has not provided the plaintiff with an alternative legal way to challenge the validity of the tax." *Id.* at 373. That scenario aptly applied to South Carolina's suit, the Court explained.

For most aggrieved persons, Congress had provided an alternative avenue to relief: a refund suit under 26 U.S.C. § 7422. However, because South Carolina did not purchase the bonds, it could not avail itself of § 7422 to challenge the allegedly unconstitutional federal tax provision. Thus, if the State's suit was barred by the AIA, it would have to rely on its residents to purchase the bonds, file refund suits, and then raise the State's constitutional claims. Because it was "by no means certain that the State would be able to convince a taxpayer to raise its claims," enforcing the AIA's jurisdictional bar "would create the risk that the [AIA] would entirely deprive the State of any opportunity to obtain review of its claims." *Id.* at 380-81.

Neither exception applies to plaintiff's case. Plaintiff has not alleged that "under no circumstances could the Government ultimately prevail." *Williams Packing*, 370 U.S. at 7. Nor could he, in light of the judgment issued by Judge Motz. *See Riker (Rocky) McKenzie*, JFM-07-2317, ECF 11. Consequently, plaintiff has not demonstrated that the United States could not prevail on its tax claim. *See Judicial Watch*, 317 F.3d at 407; *accord O'hara v. Comm'r of IRS*, TDC-14-4044, 2015 WL 6739154, at *2 (D. Md. Nov. 2, 2015). The second exception likewise does not apply because plaintiff has other available remedies. Plaintiff could pay the tax and sue for a refund in a federal

district court, pursuant to 26 USC § 7422. Or, he can request a hearing with the IRS, pursuant to 26 U.S.C. § 6330, and may seek judicial review of any adverse determination, under 26 U.S.C. § 7433.

Thus, because plaintiff's suit does not fall within the narrow exceptions to the Anti-Injunction Act, his claims for injunctive relief, lodged in Counts I, IV, V, and VII, are subject to dismissal. *See, e.g.*, *O'hara*, 2015 WL 6739154, at *2.

To the extent that plaintiff seeks declaratory relief, *see* ECF 1, ¶ 61, the Declaratory Judgment Act specifically states that it does not apply "with respect to Federal taxes." 28 U.S.C. § 2201. This exemption "is at least as broad as the Anti-Injunction Act." *Bob Jones Univ.*, 416 U.S. at 732 n.7; *see also Cohen v. United States*, 650 F.3d 717, 727 (D.C. Cir. 2011) (en banc) (noting that the Anti-Injunction Act and the Declaratory Judgment Act are "coterminous"). Therefore, to the extent that plaintiff seeks declaratory relief in Counts I, IV, V, and VII, those claims are subject to dismissal.

### 2. FOIA Claim (Count II)

Count II alleges that the IRS has "failed to release all pertinent information regarding [plaintiff's] claim," in violation of FOIA, 5 U.S.C. § 552. ECF 1, ¶¶ 41-47.

"The Freedom of Information Act was enacted to facilitate public access to Government documents," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), and to vindicate the public's right to know "what their government is up to." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quotation marks omitted); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."); *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 746 F. 3d. 1082, 1087-88 (D.C. Cir. 2014); *Havemann v. Colvin*, 537 F. App'x 142, 146 (4th Cir. 2013) (per curiam). Consistent with this objective, FOIA requires that "each [federal] agency, upon any request for records which (i)

reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

FOIA grants courts "jurisdiction to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Hence, the Supreme Court has explained that, under FOIA, "federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)). Only when each of these criteria is met may a district court "force an agency to comply with the FOIA's disclosure requirements." *Tax Analysts*, 492 U.S. at 142.

"Before commencing litigation, a requester must ordinarily exhaust administrative remedies by appealing an issue through the FOIA administrative process following an initial adverse determination by the agency." *Coleman v. Drug Enf't Admin.*, 714 F.3d 816, 820 (4th Cir. 2013) (citing *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam)); *see Competitive Enter. Inst. v. EPA*, 167 F. Supp. 3d 74, 78 (D.D.C. 2016) ("'It goes without saying that exhaustion of remedies is required in FOIA cases.'") (quoting *Dettmann v. DOJ*, 802 F.2d 1472, 1476 (D.C. Cir. 1986)).

When an agency subject to FOIA receives a request for records, it has twenty working days to "determine . . . whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i). If the requester is dissatisfied with the agency's determination, he may file an administrative appeal, which the agency must decide within twenty days. *Id.* § 552(a)(6)(A)(i). At that point, the requester may seek judicial review of his FOIA claim. Alternatively, if an agency fails to respond to a request within twenty days, a requester "shall be deemed to have exhausted his administrative remedies with

respect to such request" and may therefore immediately seek judicial review in federal district court. *Id.* § 552(a)(6)(C); *see Coleman*, 714 F.3d at 820; *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) ("A requester is considered to have constructively exhausted administrative remedies and may seek judicial review immediately if . . . the agency fails to answer the request within twenty days."). If, however, the agency cures its failure to respond before the suit is filed, then the requester must exhaust his administrative remedies before seeking judicial review. *See Coleman*, 714 F.3d at 820.

Although the exhaustion requirement may seem like bureaucratic minutia, it serves important goals. FOIA's exhaustion requirement provides the agency with an "opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). And, it "allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review." *Id.* Excusing a litigant from exhausting his administrative remedies "would be both contrary to 'orderly procedure and good administration" and unfair "to those who are engaged in the tasks of administration' to decide an issue which the [agency] never had a fair opportunity to resolve prior to being ushered into litigation." *Dettmann*, 802 F.2d at 82 n.8 (citation omitted).

The Government contends that the Court lacks jurisdiction over plaintiff's FOIA claim because he has not plausibly alleged that he exhausted his administrative remedies. ECF 18-1 at 7. But, the Government does not specify whether this contention relies on Fed. R. Civ. P. 12(b)(1) or 12(b)(6). *See Miller v. Herman*, 600 F.3d 726, 731 (7th Cir. 2010) (noting that "[t]he conflation of jurisdictional and non-jurisdictional limitations on causes of action is not an uncommon occurrence").

Despite the presence of jurisdictional language in 5 U.S.C. § 552(a)(4)(B), courts have rejected the contention that the failure to establish a statutory prerequisite to a FOIA claim strips a

court of subject-matter jurisdiction, concluding instead that the claim fails as a matter of law under Rule 12(b)(6). *See Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 566-67 (2d Cir. 2016) (construing § 552(a)(4)(B) to "reference remedial power, not subject-matter jurisdiction"); *Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, 566 F.3d 219, 225 (D.C. Cir. 2009) (holding that the district court erred in "dismissing the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)," but affirming the dismissal for failure to state a claim "[b]ecause we conclude that OA is not an agency covered by [the] FOIA"); *accord Cause of Action Inst. v. IRS*, 390 F. Supp. 3d 84, 90-96 (D.D.C. 2019) (whether requested records fell within FOIA's sweep implicated Rule 12(b)(6), not Rule 12(b)(1)). Indeed, the D.C. Circuit has determined that FOIA's exhaustion requirement is more properly viewed as a "jurisprudential" doctrine, rather than a jurisdictional doctrine, "because the FOIA does not unequivocally make it so." *Hidalgo v. FBI*, 334 F.3d 1256, 1258 (D.C. Cir. 2003); *see also Bayala v. U.S. Dep't of Homeland Sec.*, 827 F.3d 31, 35 (D.C. Cir. 2016) (failure to exhaust is a "substantive ground for rejecting a FOIA claim in litigation"); *accord Saldana v. Fed. Bureau of Prisons*, 715 F. Supp. 2d 10, 18 (D.D.C. 2010). Thus, I shall examine the sufficiency of the allegations in the Complaint concerning administrative exhaustion under Rule 12(b)(6).[5]

Here, construing the Complaint liberally, plaintiff claims that the IRS responded to his request for records. The Complaint alleges: "The IRS has refused to provide the documentation requested but has maintained its stance on the interest being owed to the DOJ." ECF 1, ¶ 28. However, there is no allegation that plaintiff exhausted his administrative remedies by seeking further review from the IRS

---

[5] I pause to note that the Supreme Court recently explained that exhaustion under Title VII is not jurisdictional, but rather a "claim-processing rule[] that must be timely raised to come into play." *Fort Bend Cty. v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 1846, 1850 (2019).

of its initial response to his request. To the contrary, plaintiff has done little more than allege that he requested documents from the IRS and did not receive the information that he requested. *Id.* ¶ 42.

Therefore, plaintiff has not adequately alleged that he has exhausted his administrative remedies, rendering his federal lawsuit premature. *See, e.g.*, *Gunter v. U.S. Secret Serv.*, No. 19-353 (TFH), 2020 WL 570010, at *2 (D.D.C. Feb. 5, 2020) (dismissing FOIA claim under Rule 12(b)(6) for failure to plead facts concerning exhaustion); *Brown v. FBI*, 793 F. Supp. 2d 368, 380-81 (D.D.C. 2011) (same); *Sindram v. Fox*, No. 07-0222, 2007 WL 3225995, at *2 (E.D. Pa. Oct. 31, 2007) (same). Accordingly, I shall dismiss Count II.

### 3. APA Claim (Count VII)

In Count VII, plaintiff alleges that the Government's refusal to provide him with documents pertaining to his garnishments is "arbitrary and capricious and contrary to the law," in violation of the APA, 5 U.S.C. § 706(2)(A). ECF 1, ¶¶ 73-82.

The APA provides for judicial review of a final agency action. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). *See Dep't of Comm. v. New York*, ___ U.S. ___, 139 S. Ct. 2551, 2567 (2019); *Abbott Labs. v. Gardner*, 387 U.S. 136, 140-41, (1967); *see also Ergon-W. Va., Inc. v. EPA*, 896 F.3d 600, 609 (4th Cir. 2018); *Roland v. U.S. Citizenship & Immigration Servs.*, 850 F.3d 625, 629 n.3 (4th Cir. 2017); *Friends of Back Bay v. U.S. Army Corps of Eng'rs,* 681 F.3d 581, 586 (4th Cir. 2012).

"The APA provides that a reviewing court is bound to 'hold unlawful and set aside agency action' for certain specified reasons, including whenever the challenged act is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Friends of Back Bay*, 681 F.3d at 586-87 (quoting 5 U.S.C. § 706(2)(A)); *see United States v. Bean*, 537 U.S. 71, 77 (2002); *Roe v.*

*Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2019). Review under the APA is highly deferential, however, and the agency action enjoys a presumption of validity. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Nat. Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1400 (4th Cir. 1993)). But, judicial review does not amount to "'a rubber stamp of agency action.'" *Ergon-W. Va., Inc.*, 896 F.3d at 609 (citation omitted).

In assessing an agency decision, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). But, the court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And, so long as the agency "'provide[s] an explanation of its decision that includes a rational connection between the facts found and the choice made,' its decision should be sustained." *Perez v. Cissna*, 914 F.3d 846, 855 (4th Cir. 2019) (quoting *Ohio Valley Envtl. Coal.*, 556 F.3d at 192); *see also State Farm*, 463 U.S. at 43 (noting that a court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").

On the other hand, agency action is arbitrary and capricious when the agency "'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sierra Club v. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018) (citation omitted). Notably, the court "'may not supply a reasoned basis for the agency's action that the agency itself has not given.'" *Roe*, 947 F.3d at 220 (citation omitted).

The Government asserts that plaintiff's APA claim fails as a matter of law because the APA only provides for judicial review of agency action if "there is no other adequate remedy in a court," 5 U.S.C. § 704, and here FOIA provides for relief similar to that sought by plaintiff through his APA claim. ECF 18-1 at 7 n.3. The Government is correct.

At its core, plaintiff's APA claim appears to be based on the IRS allegedly denying him access to pertinent tax documents. ECF 1, ¶ 81 ("The denial of Plaintiff [sic] right to inspect all documentation regarding the claim was arbitrary and capricious and contrary to the law."). It follows, then, that plaintiff's remedy would be the same under either statute—an injunction ordering the IRS to disclose the documents that plaintiff seeks. Because plaintiff's APA claim is coextensive with his FOIA claim, it cannot be said that there exists no other adequate judicial remedy. *See Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1148 (8th Cir. 2011) ("FOIA specifically bars judicial review of an APA claim where the claimant seeks 'a court order' to produce the same documents under both FOIA and the APA."); *see also Rimmer v. Holder*, 700 F.3d 246, 263-64 (6th Cir. 2012); *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005); *Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) (listing cases for the proposition that courts "have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA").

Therefore, I shall grant the Government Motion as to Count VII.

### 4. Claim Under 26 U.S.C. §§ 6103 and 7431 (Count VI)

Count VI alleges that the Government improperly disclosed plaintiff's tax documents, in violation of 26 U.S.C. §§ 6103 and 7431. ECF 1, ¶¶ 68-72.

"These provisions generally provide that it is unlawful for a federal official to inspect and/or disclose a taxpayer's tax return absent authorization." *Nat'l Org. for Marriage, Inc. v. United States*, 24 F. Supp. 3d 518, 523 (E.D. Va. 2014). Section 6103 of Title 26 of the United States Code states,

in relevant part, that tax returns "shall be confidential" and that "no officer or employee of the United States . . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer," unless otherwise permitted by law. 26 U.S.C. § 6103(a). Section 7431 provides a civil cause of action for violations of § 6103. *See Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 870 (9th Cir. 2009). It provides, in part, 26 U.S.C. § 7431(a)(1):

> If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

The term "return information" refers to "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, . . . ." *Id.* § 6103(b)(2)(A). A taxpayer's identity is "the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number . . . or a combination thereof." *Id.* § 6103(b)(6).

To state a claim under § 7431(a), a plaintiff must adequately plead "(1) that the disclosure was unauthorized, (2) that the disclosure was made 'knowingly or by reason of negligence' and (3) that the disclosure was in violation of Section 6103." *Flippo v. United States*, 670 F. Supp. 638, 641 (W.D.N.C. 1987), *aff'd*, 849 F.2d 604 (4th Cir. 1988) (per curiam); *see also Kenny v. United States*, 489 F. App'x 628, 631 (3d Cir. 2012) ("To establish a claim under § 7431, [a plaintiff] must demonstrate (1) a violation of 26 U.S.C. § 6103 and (2) that the violation resulted from knowing or negligent conduct."). This requires that a plaintiff "'specifically allege who made the alleged disclosures, to whom they were made, the nature of the disclosures, the circumstances surrounding them, and the dates on which they were made.'" *Bancroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82, 100-01 (D.D.C. 2018) (citation omitted). And, a "plaintiff must also plead 'what specific return or return information an employee of the United States disclosed that violated § 6103.'" *Id.* at

101 (citation omitted). Thus, "'mere allegations of a[n unauthorized] disclosure are insufficient to support a cause of action.'" *Dean v. United States*, No. 09-3095 (MCL), 2010 WL 1257792, at *4 (D.N.J. Mar. 29, 2010) (alteration in *Dean*) (citation omitted); *see also May v. United* States, 2:17-cv-04157-NKL, 2017 WL 6419298, at *2 (W.D. Mo. Dec. 15, 2017) (dismissing conclusory § 7431 claim under Rule 12(b)(6)); *Kenny v. United States*, No. 08-3921 (GEB), 2009 WL 276511, at *8 (D.N.J. Feb. 5, 2009); *Cryer v. United States*, 554 F. Supp. 2d 642, 645 (W.D. La. 2008).

Cognizant that plaintiff is self-represented, and viewing the Complaint in the light most favorable to plaintiff, I nonetheless conclude that plaintiff has failed to state a plausible § 7431 claim. The Complaint is bereft of any factual allegations pertaining to the improper disclosure of confidential tax information. There are no allegations that the IRS disclosed any of plaintiff's "return information." The Complaint does not allege that any such disclosures were unauthorized. Nor does the Complaint specify to whom such disclosures were made.

Instead, the Complaint appears to assume that violations of § 6103 have occurred because the IRS issued garnishment orders and, according to plaintiff, the levy is unlawful. ECF 1, ¶ 71. This single speculative allegation is insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678 (observing that Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citation omitted); *Twombly*, 550 U.S. at 555.

In sum, Count VI is subject to dismissal.

### 5. Criminal Law Claims (Counts III and X)

In Counts III and X, the Complaint asserts claims under 18 U.S.C. §§ 241 and 242, respectively. ECF 1, ¶¶ 48-53, 90-93. Section 241 is titled "Conspiracy against rights." It provides:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person
> in any State, Territory, Commonwealth, Possession, or District in the free exercise or

enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

Section 242 of 18 U.S.C., titled "Deprivation of rights under color of law," states:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

The Supreme Court has made clear that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). Federal rights of action, like substantive federal law, "must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). "To create a private right of action," the Fourth Circuit has explained, Congress must "'speak[] with a clear voice' and the statute must 'unambiguously' express the intent 'to create not just a private *right* but also a private *remedy*." *Clear Sky Car Wash LLC v. City of Chesapeake*, 743 F.3d 438, 444 (4th Cir. 2014) (quoting *Gonzaga Univ.*

*v. Doe*, 536 U.S. 273, 284 (2002)) (emphasis in *Gonzaga*). Where "Congress is silent or ambiguous, courts may not find a cause of action 'no matter how desirable that might be as a policy matter.'" *Planned Parenthood S. Atlantic v. Baker*, 941 F.3d 687, 695 (4th Cir. 2019) (quoting *Alexander*, 532 U.S. at 286-87). This holds true for federal criminal statutes. *See Doe v. Broderick*, 225 F.3d 440, 448 (4th Cir. 2000); *Fed Sav. & Loan Ins. Co. v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987); *accord Tam Anh Pahm v. Deutsche Bank Nat. Trust Co.*, 583 F. App'x 216, 217 (4th Cir. 2014) (mem. opinion).

The sections of Title 18 cited by plaintiff do not create a private right of action. Nor do they unambiguously provide plaintiff with either a private right or remedy. To the contrary, these provisions are "bare criminal statute[s], with absolutely no indication that civil enforcement of any kind [i]s available to anyone." *Cort v. Ash*, 422 U.S. 66, 80 (1975). Indeed, because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), "[a] private person may not initiate a criminal action in the federal courts." *Ras-Selah: 7 Tafari: El v. Glasser and Glasser PLC*, 434 F. App'x 236, 236 (4th Cir. 2011) (per curiam); *see also Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) ("It is a truism . . . that in our federal system crimes are always prosecuted by the Federal Government[.]")

Other courts that have examined claims for civil damages brought under 18 U.S.C. §§ 241 and 242 have reached the same conclusion. *See, e.g.*, *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("[T]he district court properly dismissed [plaintiff's] claim pursuant to 18 U.S.C. §§ 241 or 242 because [plaintiff] has no private right of action under either of these criminal statutes."); *Allen v. Gold Cty. Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (affirming dismissal of "claims under 18 U.S.C. §§ 241 and 242 because these are criminal statutes that do not give rise to

civil liability"); *Davis v. Sarles*, 134 F. Supp. 3d 223, 228 (D.D.C. 2015) (finding that "plaintiffs' reliance on 18 U.S.C. § 241 and § 242 as the jurisdictional basis of their claim . . . fails as a matter of law since those federal criminal statutes do not create a private right of action.").

Accordingly, plaintiff may not assert claims based on alleged violations of federal criminal law. Therefore, such claims are subject to dismissal, with prejudice.

### 6. Section 1983 Claim

Plaintiff mentions 42 U.S.C. § 1983 in Count VIII. *See* ECF 1, ¶ 86. And, the Oppositions each contain a section titled "42 U.S.C. § 1983 Claim." ECF 32 at 5; ECF 33 at 5; ECF 34 at 5.

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1893 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was

committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Plaintiff's § 1983 claim falters because § 1983 applies only to parties "clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). Thus, § 1983 does not apply to federal officials acting purely under the color of federal law. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (observing that "§ 1983 does not apply to federal actors"); *Smith v. Donahoe*, 917 F. Supp. 2d 562, 568 (E.D. Va. 2013).

The IRS is a federal agency. *See* Pub. L. No. 105-206, 112 Stat. 685 (1998) (establish the IRS as a federal agency). Accordingly, when the IRS collects taxes on behalf of the United States, it acts under federal, not state law, and so IRS agents are not subject to suit under § 1983. *See Kotmair v. Gray*, 505 F.2d 744, 746 (4th Cir. 1974) (stating that IRS employees cannot be sued under § 1983); *see also Polsky v. United* States, 844 F.3d 170, 173-74 (3d Cir. 2016) (same); *Yalkut v. Gemignani*, 873 F.2d 31, 35 (2d Cir. 1989) (same). As such, I shall dismiss plaintiff's § 1983 claim in Count VIII.

### 7. *Bivens* Claims

Reading the self-represented plaintiff's Complaint liberally, he appears to be alleging a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, (1971). ECF 1, ¶¶ 64, 68.

Under *Bivens*, a federal official may be held personally liable for damages if the official personally violated a plaintiff's constitutional rights. 403 U.S. at 397; *see also Tun-Cos v. Perrotee*, 922 F.3d 514, 520 (4th Cir. 2019). In *Bivens*, the Supreme Court found that the Fourth Amendment contained an implied private cause of action for damages against federal narcotics agents who allegedly conducted an illegal search and seizure. *Bivens*, 403 U.S. at 397.

In the wake of *Bivens*, however, the Supreme Court has been reluctant to imply other private actions against federal officers for money damages, recognizing a *Bivens* remedy in just two cases. In *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the Court recognized that the equal protection component of the Fifth Amendment's Due Process Clause provided a damages remedy for an assistant who alleged that a Congressman fired her because she was a woman. And, in *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal jailers to provide adequate medical care. *See id.* at 19.

However, since *Carlson*, the Court has repeatedly refused to extend the *Bivens* doctrine to new factual scenarios. *See Tun-Cos*, 922 F.3d at 521 (cataloguing the nine Supreme Court cases rejecting *Bivens* claims). And, the Court has admonished that expanding *Bivens* is a "'disfavored' judicial activity" that should not be undertaken lightly. *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1857 (2017) (citation omitted).

Moreover, a court may not infer a *Bivens* remedy when Congress "has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of [a government program's] administration." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988); *See Judicial Watch*, 317 F.3d at 401 (noting that "[t]he Court's refusal to extend *Bivens* has been especially apparent in cases involving complex statutory schemes in which Congress has

considered and created meaningful avenues for redress"). And, as the Fourth Circuit has observed, "[i]t would be difficult to conceive of a more comprehensive statutory scheme, or one that has received more intense scrutiny from Congress, than the Internal Revenue Code." *Judicial Watch*, 317 F.3d at 410.

In light of the Supreme Court's reluctance to expand *Bivens* claims, as well as the detailed nature of the Internal Revenue Code, the Fourth Circuit—and every other federal court of appeals—has ruled that *Bivens* does not provide relief from the allegedly unconstitutional actions of IRS officials engaged in tax assessment and collection. *See id.* at 409-12; *accord Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011) (plaintiffs have no *Bivens* remedy for allegedly unconstitutional actions of IRS officials); *Al-Sharif v. United States*, 296 F. App'x 740, 741-42 (11th Cir. 2008); *Hudson Valley Black Press v. IRS*, 409 F.3d 106, 114 (2d Cir. 2005); *Adams v. Johnson*, 355 F.3d 1179, 1188 (9th Cir. 2004); *Shreiber v. Mastrogiovanni*, 214 F.3d 148, 152 (3d Cir. 2000); *Dahn v. United States*, 127 F.3d 1249, 1254 (10th Cir. 1997); *Fishburn v. Brown*, 125 F.3d 979, 982-83 (6th Cir. 1997); *Vennes v. An Unknown Number of Unidentified Agents of the U.S*, 26 F.3d 1448, 1453-54 (8th Cir. 1994); *McMillen v. U.S. Dep't of Treasury*, 960 F.2d 187, 190 (1st Cir. 1991) (per curiam) *Baddour, Inc. v. United States*, 802 F.2d 801, 807-09 (5th Cir. 1986); *Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir. 1985).

Thus, to the extent that the Complaint asserts a *Bivens* claim, it is subject to dismissal.

### B. The STA and PAC Motions

The PAC Defendants and STA Defendants contend that 26 U.S.C. § 6332(e) immunizes them from liability and thus plaintiff has failed to state a claim upon which relief can be granted. ECF 22-1 at 4-5; 23-1 at 4-6.

When a taxpayer is delinquent in paying taxes, the IRS may collect the tax by issuing a levy on the taxpayer's "property and rights to property." 26 U.S.C. § 6331(a). When the IRS does so, "the IRS 'steps into the taxpayer's shoes'" and "acquires whatever rights the taxpayer himself possesses." *United States v. Nat'l Bank of Comm.*, 472 U.S. 713, 725 (1985) (citation omitted). A custodian of the taxpayer's property who receives such a notice of levy issued by the IRS has an affirmative legal obligation to comply with the levy and surrender the property. *See* 26 U.S.C. § 6332(a) (providing that "any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights"). In fact, an individual who refuses to comply with an IRS levy is personally liable to the IRS in the amount of the levy and is also subject to penalties. *Id.* §§ 6332(d)(1)-(d)(2); *accord United States v. MPM Fin. Grp., Inc.*, 215 F. App'x 476 (6th Cir. 2007) (employer was liable for failing to comply with IRS levy to collect employee's wages).

Recognizing that this position placed third parties "between the Scylla of IRS fury and the Charybdis of taxpayer vengeance every time a levy is made," *Farr v. United States*, 990 F.2d 451, 456 (9th Cir. 1993), Congress conferred immunity from suit on a custodian who complies with a IRS levy served on it. Specifically, 26 U.S.C. § 6332(e) provides:

> Any person in possession of [property] subject to levy upon which a levy has been made who, upon demand by the Secretary [of Treasury], surrenders such [property] to the Secretary . . . shall be discharged from any obligation or liability to the delinquent taxpayer . . . .

*See also Phelps v. United States*, 421 U.S. 330, 335 (1975) ("With surrender . . . any duty owed the taxpayer is extinguished."); *Lewis v. Sandler*, 498 F.2d 395, 397 n.1 (4th Cir. 1974).[6]

---

[6] When *Phelps* and *Lewis* were decided, the section currently numbered 6332(e) was then numbered 6332(d).

In short, the force of § 6332(e) is that "[a]ny claim that the levy is wrongful must be asserted against the IRS itself, not against the person upon whom the notice of levy is served." *Dietz v. Conn. Gen. Life Ins. Co.*, 179 F. Supp. 2d 532, 533 (D. Md. 2001). In light of the clear language of § 6632(e), courts "routinely dismiss claims (or affirm the dismissal of claims) by taxpayers or others arising from a defendant's actions in honoring a tax levy." *Caudle v. Colandene*, 115 F. Supp. 3d 713, 719 (W.D. Va. 2015) (collecting cases); *see also Joseph v. United* States, 517 F. App'x 543, 543-44 (9th Cir. 2013) (mem. opinion) (dismissing claims because defendants were immune from liability under § 6332(e)); *Satterlee v. Comm'r of Internal Revenue*, 195 F. Supp. 3d 327 (D.D.C. 2016) (same).

Here, plaintiff seeks to foist liability on the PAC Defendants and STA Defendants for complying with the levy placed on plaintiff's royalty payments in the possession of the PAC and STA. *See* ECF 1, ¶¶ 65, 86, 91, 94. By law, the PAC and STA had to comply with the levy notice. *See Nat'l Bank of Comm.*, 472 U.S. at 727 ("[A] bank served with a notice of levy has two, and only two, possible defenses for failure to comply with the demand: that it is not in possession of property of the taxpayer, or that the property is subject to a prior judicial attachment or execution."). In return, § 6332(e) shields the PAC Defendants and STA Defendants from liability arising from their compliance with the tax levy.

Thus, I shall grant the PAC Motion and the STA Motion.

## IV.     Conclusion

For the reasons stated above, I shall GRANT the Government Motion (ECF 18), the PAC Motion (ECF 22 ), and the STA Motion (ECF 23).

An Order follows, consistent with this Memorandum Opinion.

Date: February 24, 2020                                    _____/s/_____

                                                                         Ellen L. Hollander
                                                                         United States District Judge